Excuse me, number 2130237 Carter v. St. Tammany Parish School Board, and we'll hear first from Mr. Wilson. Are you court-appointed? No, ma'am. Oh, okay. I'm sorry, I was thinking wrong. I did not represent Ms. Carter in the district court, but I enrolled her in this appeal. And may it please the court, my name is Scott Wilson. I represent Ms. Erin Carter in this case involving FMLA, ADA, and there's a Rule 59e issue as well. Ms. Carter, a schoolteacher, worked with the school board. Ms. Burns, the other defendant, was a principal. Her son has epilepsy and she has intractable migraines. She missed work due to her migraine issue, and her doctor, Dr. Sparks, gave a note, faxed it over to the school board, saying she needs to be out of work for the next, I think it was 30 days or so, because of her intractable migraines, which intractable migraines, by definition, last for 72 hours. If they don't last that long, they're not called intractable migraines. She also saw, followed up with a specialist, so she was treated twice within 30 days of the first period of incapacity, satisfying the definition under the FMLA of a serious health condition. She asked for an extended sick leave, and she filled out a form requesting extended sick leave and put that with Dr. Sparks' note. The school board then reviewed it under a state statute, not the FMLA at all. The state statute would provide for extended medical sick leave if it were a medical necessity, which is a defined term under that state statute, but not really under the FMLA. They did not determine whether she had a serious health condition under the FMLA. They did not mention to her the FMLA or its protections. There was no notice posted anywhere. There was no FMLA policy in the handbook. She literally had no clue that it existed. She appealed the denial. I thought they said it was in the handbook or it was in some document she was given when she first came. What they said was that it was in the collective bargaining agreement. She, in fact, never got the collective bargaining agreement. There was an issue of fact regarding that. The district court didn't really credit her denial because it wasn't in an affidavit, but it credited the information from the school board person who said, everybody got the CBA, but did not really appear to have personal knowledge on that score. In any event, the CBA said there's an FMLA and you'll get a form provided by the school board. She never did get an FMLA form from the school board. What she got was an application for leave without pay. But if she had filled out that form, could she not have received the FMLA? It's not by any means clear that she would have. No, the form does not mention FMLA. But if they gave her, if they said they would give her medical leave without pay, isn't that what FMLA is? No, Your Honor, not entirely. FMLA guarantees also that there will be maintenance of your benefits. She, of course, had a son with epilepsy. Maintaining her health insurance was important to her. She had no information that the benefits would be restored or under what conditions. She was dealing with migraine headaches. It's really actually under the FMLA incumbent on the employer to inform these employees. She was not an expert. It seems to me, okay, let's say because she wasn't told it was FMLA leave, that she just thought it was regular unpaid leave. I mean, that's better, right? Because then you think, well, I've still got this FMLA leave stored up if my son needs me or something else happens. She didn't have any idea that the FMLA existed. So it's not like she felt, oh, I've got FMLA in my back pocket. But the other thing is... What did she think she was doing? Because she just stopped going to work and was getting paid for two months plus. What status did she think she was on where they denied her leave with pay, but yet she took leave with pay? She did not take leave with pay. She did get paid, didn't she, until she got fired? No, in fact, she was terminated effective the date that she took leave, the date that Dr. Sparks sent in the... I don't know that that's in the record. I'm not aware that she got... She was struggling. She did not know whether her health insurance was going to stay in effect. Nobody mentioned whether even her job was going to be held for her. You know, if she's smart enough to care for an epileptic son, which I know must be a terrible burden, she probably knows how to navigate medical insurance and that sort of thing. So it's a little difficult to credit the inaction of Ms. Carter here. Respectfully disagree, Your Honor. That's the whole point of the Family Medical Leave Act and that it places on the employer the obligation to inform the employee of all of these rights. This is actually not a very sophisticated employee. She was struggling as a single parent and just dependent on... She didn't get fired until after the school year ended. They had the hearing, she missed... She didn't know about the first hearing, after the school year ended. I thought she was getting paid throughout the school year. You're saying that's not true? I don't know whether she was, to be honest. Judge Costa, I really don't know. But from my perspective... She had never, not a single time, anyone from the school board mention the FMLA. She could not make any kind of an informed decision about what to do. She had no idea. There are extensive, very exquisite procedural requirements for notice imposed on the employers by the FMLA and the regulations. And an informed employee is a compliant employee. My client was completely uninformed. Had no shred of a clue that the FMLA existed. Was in the universe. Why didn't she fill out the form? I understand why she would rather have paid than unpaid leave. I get that. But if her choice is getting fired or unpaid leave, why wouldn't she fill out the form? She did not appreciate what her choice was. And in actuality, her choice should have been to be informed of her rights under the FMLA. To her rights to maintenance of benefits, to job restoration... The case for the proposition that merely failing to inform of FMLA, but allowing somebody to take unpaid leave if they fill out a form, is itself an actionable violation. That the simple taking of unpaid leave is not equal to your right to unpaid leave under the FMLA. I'm explaining it. It's not all of it. You don't get the maintenance of benefits. You don't get the job restoration of benefits. You don't get the job restoration guarantee. Those are... A legal case. A case in a book somewhere. An F-third. Oh, you're asking me a side of the case? They're actually not out there. All of the FMLA decisions that I read... They get it. They take it. Then they claim they were fired for taking it. Or maybe they didn't call in and hit the right prompt for the FMLA leave button, but at least there's a prompt to hit the FMLA leave button. Here, there was no anything saying FMLA that she failed to do. She did not fail to exercise any rights that she knew she had under the FMLA. And in fact, it doesn't appear she had any. Do we have her deposition in the record? Honestly, I don't know. I would be surprised if it weren't. I did not, again, represent her in the district court. I'm familiar with the record. But what we do have is the application for leave without pay at record 201. Which your honors can see does not mention FMLA. This question before about why she didn't fill out the slip, I thought the likely answer is because she wanted to keep getting paid. If you fill out an unpaid leave slip, the pay stops. Wouldn't that explain why she didn't fill out the slips? I don't, I really... Let's just say that what she wanted, because it's not an unreasonable surmise to say she didn't fill out the application for leave without pay, because she wanted to get paid. Yes, I guess she did, but the fact remains, not ever, ever, ever once was she informed or made aware that the FMLA was a thing. And so she could not make any kind of an informed decision about, am I going to get my job? Why would she make a different decision? She was offered leave without pay. Why would her decision have been different if they said you get FMLA leave without pay? Because, again, it would have said, if this were an FMLA form, it would have said, you have a right, your health insurance benefits will be maintained during this period of leave. Your job will be, you will be returned to the same or an equivalent job. None of that is on the document that she was given. She would have had an eligibility notice telling her, you're eligible, this is going to count against what's called an FMLA leave entitlement. Did she provide evidence that that's the health insurance deposition and declaration, that the health insurance was what drove her decision? No. She had no idea of any of this. She didn't. I thought you said that health insurance would have mattered to her. Yes, it would have. So she should say in her deposition, if that's true, I was, my worry, with this unpaid leave they offered, I thought I was going to lose health insurance. And I didn't want to do that, because I've got, you know, understandably, I've got to give them my... She did not know whether she was going to lose health insurance or not, as far as I know. Nobody told her either way. Why isn't that in the record? She would say my concern was health insurance. They didn't tell me. The better question that we had was why isn't there anything in the record from the employer whose job it is to say, guess what, this is what happens to your benefits, this or this or this. It is not incumbent under the FMLA for the employee to say, well, what happens to my benefits? Yes, sir, but... Ragsdale, the Supreme Court case, are you familiar with that? It says the FMLA, it has to, provides no relief unless there's a showing of prejudice. Right. And so what is, I'm not sure what the... She lost her job because she had no idea. Well, sir, your client has the burden of proof, and it sounds to me as if your client didn't set the predicate for this by saying, I didn't, not only did I, I did not know, and I was disadvantaged. And then they could come back and say, no, you weren't disadvantaged. In other words, I think you're trying to switch the burden of proof. I think it's the only burden... But they're liable unless they dotted every I and crossed every T, and I don't understand the law to be that way. I believe the only burden of proof that my client has is showing that she made them aware adequately that she might have a serious health condition and that the FMLA was triggered. At that point, the burden under the FMLA, the statute, the regulations, shifts completely to the employer to at least make her aware that there's a law, that you have rights under federal law, FMLA. This is what will happen when you take leave to your benefits, to your right to come back to the job. All of that, all of that is burden on the, not on the employee, but on the employer. I'm not trying to shift any burden of proof. Yeah, but she has a burden of proof here, and there's no evidence she asked about that. She doesn't have to. Her evidence, all she has to do is say, I have something... She doesn't have to ask while she's at the office, but now that she's suing, she has to have said that they didn't tell her this or that and whatever, and I'm asking, why wouldn't she? If that was important, if my core was all about the insurance for my kid, I wouldn't sit there quietly about that. I would ask. I would say, what about my kid? I tell you what, if this panel wants to just like pretend like the notice requirements don't exist or that they're not there to help the employees, all she has to do, literally, is just say, I've got a potentially FMLA qualifying condition. Then it's up to the employer to tell her whether or not she does, and if not, why not? And then she has to show prejudice. I agree. Okay, yeah, I was going to say, what do you do about Ragsdale? The prejudice is that she did not sign this, she was fired after she didn't sign this. The reason she didn't sign this is because she did not understand the consequences of her failure to sign it. And she did not understand what would happen if she signed it. Wait a minute. It's not really hard to know that if you don't show up for work, you're going to eventually get fired, right? What she didn't understand, Your Honor, is what happens to her health insurance benefits, what happens to her job restoration, am I going to be able to return to the job? And she didn't have to ask them about that to show prejudice. You're saying she had no burden to even submit an affidavit to that effect? No burden whatsoever? The employer is supposed to tell her. I understand that. I say yes, Your Honor, no burden. Well, that's what I'm saying. There may be HHS or the Labor Department regulations that could be invoked here about the employer's burden, and we'll ask about that. But normally the plaintiff says, you know, I didn't feel the, I mean, you're sitting in front of, and I know you didn't represent her, and she was partly pro se. But at some point she had to go before the court with evidence and say, no, I didn't sign, I opened myself to this, I didn't understand what was going on. Is that in the transcript of the hearing? There may not be a hearing in the, you know, the letter or dismissal? The letter, after they had this just cause hearing, they said, you either resign by July 5th or you're fired. She did not want to resign. She did not want to stop working. She needed the job. She needed the benefits. She didn't want to lose the benefits. She didn't know whether she would if she signed this leave without pay. She did not know anything. And it was her employer's job to tell her. She was supposed to ask, counsel, the burden in the district court, not the burden at the job. In the district court she needs to prove prejudice. Where in the record did she do that? Prejudice is proven by the fact that the school board terminated her employment without first notifying her of her rights and depriving her, thereby, of making an informed decision. My time is up. Thank you. Did the school board understand that intractable migraines is a serious condition? I would think a reasonable person would understand that that is a serious condition. Well, I sure didn't interpret it that way from reading your brief. And I'm not talking about the ADA part of it. I'm talking about the FMLA part and the doctor's explanation about why she needed to be off for a month. I think the starting point to answer this question is to first understand that this employee had worked with the school system since 2012. And replete throughout this entire case is an overriding theme that there is no evidence of her intractable migraines in the effect on her life. The doctor said so, and believe me, you know when people have, most women have had migraines, and we know what migraines are. I mean, I haven't had that kind, but I know the characteristics. So the answer to your question was, you know, answered first and foremost by the reality that Ms. Carter knew exactly what she was doing. What is missing at this point in the analysis is she requested extended paid leave under state law. And that's why she became so angry. Under 17 colon. Did you depose her? She was not deposed. Well, so how do we know all this about the inner workings of her mind? Well, I can only speculate based on the record before me. I don't want to speculate. I mean, he was speculating about she didn't understand this. You're speculating she wanted paid leave. She was angry. Okay. What I'd like to do is look at a non-speculative issue, which is page two of Judge Ash's reasons for judgment. I think Judge Ash carefully balanced all the facts that he could ascertain in this case. I think he properly ruled. And he made the determination that she did, in fact, apply for extended paid sick leave. And when she did not get it, that is why she did not want to fill out the form for leave without pay. She was paid for the school years starting in 2012 all the way through 2016. And there is no evidence in this case that she ever missed work or even had migraines, intractable or otherwise. It's another complete absence of information on a serious medical condition that we could all have. That's why I asked you at the beginning, did the school district know whether she had intractable migraines? And I didn't think you really challenged her. Your doctor says she has intractable migraines. And then when she sends that odd note, it says, I've been at Children's Hospital, which I think one may infer is her son and not herself, and at the neurologist. So whoever received that note, surely there were, she may not have made her case. I'm not saying that. But it just seemed, Judge Ash found that it was not a serious health condition. There wasn't proof of a serious health condition, right? That's correct. Do you agree with that? I do. In this case. In fact, Judge Ash cited the cases that said they can be. To make this very personal, my wife has migraine headaches. And sometimes she has one a year and sometimes she doesn't. And she's a full-time teacher and she takes medication and she controls them. And when she has them, she might have to go to the doctor. Take a certain amount of time off from work, which she accumulates with her paid sick leave. Then she goes back to work. So just because a condition can create a significant impact on your life, doesn't mean that it absolutely will in a particular case. And in this case, it's very notable that the appellee's counsel, when he went to cite this record on how serious her medical condition was, he couldn't. He cited the internet. There's one note from the doctor. One note does not make a condition sufficient to trigger paid leave. But she did qualify for unpaid leave. And she wouldn't fill the form out. And she knew what she was doing when she wouldn't fill that form out, because filling it out was a recognition that it wasn't a condition that was severe enough to qualify for paid leave. Now I'm arguing on that point. She would have stopped getting paid. That's correct. And she knew enough about FMLA to file an EEOC complaint. See, what really happened, which isn't in this record, is she worked for the school system for six years without any issues. And she transferred to Pitcher Junior High School on her own decision. And she worked throughout the 2015 and 2016 school year. That's in the record at document one. It's in a petition. She recognizes that. So this all came about when she started doing a dance class. And it was her personal opinion that she needed a paraprofessional. They didn't give it to her because the children didn't need a paraprofessional. So she kept asking for it over and over and over again. This is incoherent, though. It explains why she didn't fill out the request for leave form. No, it doesn't explain anything to me. But try to connect the dots. Okay. So if you work for a school system for six years and you're perfectly employed and you don't miss any time from work and you get angry at the administration for not giving you a paraprofessional or paid leave, you start saying, well, you're impacting me. You're discriminating against me. You're challenging me. My rights under the FMLA have been impacted. The ADA is you discriminate when she filed the suit. After she was correct. I mean, that's. Yeah. You know, you're you're I understand that there's all this flap about that seems irrelevant about the son with a problem. And then there's this flap about a paraprofessional. But frankly, if we were trying to deal with a retaliation claim, there has to be some temporal relationship. And she's absent once, as I recall it, for a headache and then she or maybe a couple of days. And then suddenly at the end of April. Now, it's not abundantly clear to me in the record that this flap about a paraprofessional was going on after the time that she was denied. You're you're just making that up. It's not in the record. I'm making an argument because the record has no evidence of even the son's epileptic condition. There's nothing in the record that shows the son, in fact, has epilepsy. There is nothing in the record that says this lady had intractable migraines that required her to get sufficient care so that it impacted her life. There is no evidence. And that's why I speculated on why she didn't fill out the leave form. That's it. Well, that's the peculiarity about this whole record. It's all you're both speculating about a woman who's never even been deposed or filed an affidavit and claims to be the plaintiff. But did she or did she not get paid until she was terminated? Respectfully, I do not know. She was a salaried employee. I do believe she was paid. That is something if absolutely required could be supplemented. But the point I'm trying to make is that she did not fill out the form that would have qualified her for 12 weeks of leave without pay. That's all we know. We know she didn't fill the form out, but we don't know why. Counsel, in a summary judgment, it's her burden of proof to file an affidavit, not yours. Absolutely. So if she wanted to raise the points that her counsel made so wonderfully, she needed to fill out an affidavit on those points. Correct. And that's not the case here, right? That's correct. And she was given an enormous amount of time. She went through a multitude of lawyers. She had one enroll that he disenrolled, and then the record establishes she tried to contact some 30 lawyers to get another lawyer. But again, all this time, not one shred of evidence on her son's epileptic condition, an affidavit establishing why she didn't fill the form out, an actual prejudice to her, or even evidence of her condition. It was our burden of proof to show she had an absence of evidence. And that's what the judge ruled on. Well, what is the point of the school board not sending her some pro forma notice about FMLA leave when, and specifically referencing FMLA, when the doctor said she had intractable migraines? I think that in this particular instance, if their form had simply said FMLA leave, then you wouldn't have that argument. You're right, but it didn't. But it was the exact same thing. It's a leave without pay form that parallels the 12 weeks. Now wait. Other counsel makes the point that it says that your job is maintained and that your health benefits are continued. She had an opportunity with representation of the union in the Just Cause proceeding to ask all those questions. That's before the school year was ended. We're talking about back at the inception of this in April. And I don't disagree with you, but I'm just saying, why wouldn't a responsible school board maintain forms that said we're doing this in accordance with the Federal Family and Medical Leave Act? As a practical matter, I know the answer, but I'm just going to tell you. Because they tell this to the people all verbally. They have tremendous benefits that exceed the Federal. The state benefits normally exceed the Federal ones. Do their unpaid leave benefits exceed the Federal benefits? Sometimes, because they accumulate more hours of benefits under their own collective bargaining agreements that allow them to take an enormous amount of time off. And so as a practical matter, too, she had absolute constructive knowledge of all of this. She had union representation. She had the collective bargaining agreement. The collective bargaining agreement does reference the FMLA, but also sets up all her other procedures, which she didn't follow. She had other recourse. She could have appealed to the board. She was a tenured teacher. She didn't. So the knowledge she had can be proven by the fact that she did get a copy, as all the school employees do, and we have an affidavit to that effect, he is an associate superintendent with the requisite knowledge, that she got a copy of the collective bargaining agreement. She knew about it constructively. She, in fact, went and obtained first a request for paid leave, and then she got a form when she didn't qualify for paid leave to give her leave without pay. And it was, in fact, for 12 weeks. And she never turned it out. And she was given two opportunities. So the school system's next bit of knowledge after termination, for failing to show up for work, by the way, and poor job performance. See, the non-discriminatory basis here is poor job performance and not showing up to work. The next thing they got notice of was the EEOC complaint, which again references the FMLA. So she had counsel at that time, knew all about it. But I can't precisely tell you what was said in April of 2017, because the record isn't there. Not her information and not information from the school system either. But on summary judgment, we established that there were no genuine issues of material fact or law on the issues she was suing on. She didn't really want, is my guesstimation, the leave without pay. She wanted leave with pay. And that's the explanation I've deciphered from a very bare record. But I do think the judge carefully balanced this. He gave a very well-reasoned opinion. It's very meticulously cited to the record, and I won't bore you with the details of all his conclusions. But I find him very accurate. He considered the fact that migraine headaches can qualify for FMLA leave. He had no evidence that Ms. Carter's headaches did qualify for her for leave. You see? And I think that's the missing component. And yes, counsel is learned in this area and recognizes what he could have done, but he wasn't representing her, and she didn't, and her former counsel withdrew. Now, with regards to Rule 59E, I very much consider a motion for a new trial a lot like a motion for reconsideration on appeal. They're denied all the time unless you've got really strong evidence that you couldn't have done through due diligence something previously. Now, I want to think about this as a practical matter. If she had migraine headaches, I'm going to bet you they didn't start in 2017. See? So for six years, she could have gotten medical evidence when she was in the school system to establish that these migraines were terrible. That is total speculation. Well, again, having a little personal knowledge on personal migraines. Don't talk to us about stuff that you know because of your wife. I'm not talking to you about what I know. Whatever's in the record, please. For six years, there was no evidence that the school system had knowledge of these migraines. Six years she worked for them, there's no knowledge. We had no information about these migraines. It triggered in 2017. An analysis was made whether those migraines were sufficient for paid leave. And a determination was made that they were not because of the lack of medical evidence on it. And under state statutes, she was offered paid without leave. All I know is she didn't turn in the form. Please forgive me for speculating. I was arguing. I am telling you for not the first time, the record has nothing that would justify a reversal here. This is a case where we respectfully believe the district court should be upheld. And that he got it correct that there's no medical evidence that establishes these migraines. To this lady, caused her a problem. Just like there's no evidence of her son's, in fact, has epilepsy. And I'm not going to tell you anything about epilepsy, about the most general information that it is very severe. But we have no evidence of it.  Thank you very much. Happy to answer any questions. Mr. Wilson, rebuttal. Thank you, Your Honor. Very quickly, this is not for 12 weeks. This is not, this application for leave without pay is not for 12 weeks. It has no timing on it. I thought there was a welcome admission that, in fact, migraines for this case are a serious health condition. I think Judge Ash said it wasn't. But then I finally said, no, it wasn't, because something about the last six years that we're not even complaining about. In the record, there is Dr. Sparks' note, as Your Honor pointed out. The points that I made previously are actually, I don't think points that needed to be in affidavit. I think these were legal arguments that I was pointing out as to the things that must be included in information provided to an employee, when that employee gives notice adequately that they have potentially FMLA qualifying serious health condition. It was simply saying this is what the employer has to do. I don't believe that the employee has to put an affidavit together to show that. I think that Your Honor suggested that she has to say something like she asked for it or something, but she didn't even know what to ask for. She was completely ignorant of things. You know, Mr. Wilson, I wouldn't go too far with completely ignorant. She's teaching our children. Ignorant of the FMLA, Your Honor. She's not expected to have that knowledge. And they said that she had the collective bargaining agreement, which sets it out. They did say that. I implore Your Honor to review the record on the collective bargaining agreement and see that the associate superintendent whose affidavit says that does not make clear that he had personal knowledge of it. He just says everybody got, he doesn't say she, all the school employees get the CBA. In my chambers on your first day as a law clerk, you get certain things that I hand you. So while I might not remember exactly what I gave a law clerk one day, I know what the process is. Correct. This affiant did not say I handed them. He says they all got them. Like somehow magically they got them. It's a passive voice construction that does not permit the inference that he personally gave it to them. Or that otherwise he has some personal knowledge. It's just something that his lawyer wrote in an affidavit that he signed. My time is up. How do you know about the state policy of leave with pay if you qualify? You applied for that and didn't get it. You're saying she knew about that? She went to HR and they said here's the form. It was for medical leave with pay. Then they reviewed it under the state statute that says if you want medical leave with pay, you have to have medical necessity. She says I'm sick. She went to HR, they said here's this. What they should have done at that point, Judge Costa, was said FMLA, here's all this additional information. That's where they failed. They didn't give her enough information to make an informed decision. Thank you so much.